1 | Robert P. Zahradka (SBN 282706)
rzahradka@piteduncan.com
2 | Arnold L. Graff (SBN 269170)
agraff@piteduncan.com
3 | **PITE DUNCAN, LLP**
4375 Jutland Drive, Suite 200
4 | P.O. Box 17933
San Diego, CA 92177-0933
5 | Telephone: (858) 750-7600
Facsimile:  (619) 590-1385
6 |
7 | Attorneys for  US Bank National Association, as
Trustee for SASCO 2007-WF1
8 |

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re | Case No. 2:12-bk-36080-VZ |
|---|---|
| LAVON BOYD WHALEY AND CARL DOUGLAS WHALEY, | Chapter 13 |
|  | **OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN** |
| Debtors. | 341(a) MEETING: |
|  | DATE:        September 11, 2012 |
|  | TIME:        9:00 AM |
|  | PLACE:      Room 103, 725 S Figueroa St, Los Angeles, CA 90017 |
|  | CONFIRMATION HEARING: |
|  | DATE:        July 15, 2013 |
|  | TIME:        9:00 AM |
|  | CTRM:      1368, 255 E Temple St, Los Angeles, CA 90012 |

US Bank National Association, as Trustee for SASCO 2007-WF1 [1] (hereinafter "Creditor"),

secured creditor of the above-entitled Debtors, LaVon Boyd Whaley and Carl Douglas Whaley

(hereinafter "Debtors"), hereby objects to the Chapter 13 Plan filed by Debtors in the above-

referenced matter. Wells Fargo Home Mortgage acts as the servicing agent for Creditor. The basis of

the objection is stated below:

/././

---

[1] This Objection to Confirmation of Chapter 13 Plan shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004, notwithstanding Pite Duncan, LLP's participation in this proceeding. Moreover, the within party does not authorize Pite Duncan, LLP, either expressly or impliedly through Pite Duncan, LLP's participation in this proceeding, to act as its agent for purposes of service under Fed. R. Bankr. P. 7004.

## I.

## **STATEMENT OF FACTS**

1.       On or about November 17, 2006, Debtors, for valuable consideration, made, executed and delivered to Wells Fargo Bank, NA (hereinafter "Lender") a Promissory Note in the principal sum of $536,000.00 (the "Note").  Pursuant to the Note, Debtors are obligated to make monthly principal and interest payments. A copy of the Note is attached hereto as **exhibit A** and incorporated herein by reference.

2.       On or about November 17, 2006, Debtors made, executed and delivered to Lender a Deed of Trust (the "Deed of Trust") granting Lender a security interest in certain real property located at 11431 Jenkins Street  Artesia, California 90701 (hereinafter the "Subject Property"), which is more fully described in the Deed of Trust.  The Deed of Trust was recorded on November 28, 2008, in the official records of the Los Angeles County Recorder's office.  A copy of the Deed of Trust is attached hereto as **exhibit B** and incorporated herein by reference.

3.        Subsequently, Lender's interest in the Deed of Trust was transferred to Creditor. A copy of the Corporation Assignment of Deed of Trust is attached hereto as **exhibit C** and incorporated herein by reference.

4.       On or about March 27, 2009, LaVon Whaley filed a prior voluntary petition for relief under Chapter 7 of the Bankruptcy Code, and were assigned case No. 2:09-bk-17138-ER; said case was dismissed on or about February 18, 2010. A copy of the PACER docket entries is attached hereto as **exhibit D** and incorporated herein by reference.

5.       On or about July 14, 2009, Carl Whaley filed a prior voluntary petition for relief under Chapter 7 of the Bankruptcy Code, and were assigned case No. 2:09-bk-28003-ER; said case was dismissed on or about April 28, 2010. A copy of the PACER docket entries is attached hereto as **exhibit E** and incorporated herein by reference.

6.       On or about December 20, 2011, Debtors filed a prior voluntary petition for relief under Chapter 7 of the Bankruptcy Code, and were assigned case No. 2:11-bk-61521-TD; said case was dismissed on or about March 29, 2012. A copy of the PACER docket entries is attached hereto as **exhibit F** and incorporated herein by reference.

1    7.    On or about April 16, 2012, Debtors filed a prior voluntary petition for relief under

2 Chapter 13 of the Bankruptcy Code, and were assigned case No. 2:12-bk-23390-WB; said case was

3 dismissed on or about June 5, 2012. A copy of the PACER docket entries is attached hereto as

4 **exhibit G** and incorporated herein by reference.

5    8.    On or about July 30, 2012, Debtors filed a Chapter 13 bankruptcy petition. Debtors'

6 Chapter 13 Plan provides for payments to the Trustee in the sum of $50.00 per month for sixty (60)

7 months. However, the Debtors' Chapter 13 Plan makes no provision for the cure of Creditor's pre-

8 petition arrears.

9    9.    Creditor is in the process of finalizing its Proof of Claim in this matter. The estimated

10 pre petition arrearage on Creditor's secured claim is in the sum of $175,885.15. The pre-petition

11 arrears currently due and owing are comprised of the following:

12    a)   Five (5) missed monthly payments in the amount of $3,655.26 each.

13    b)   Six (6) missed monthly payments in the amount of $4,060.98 each.

14    c)   Six (6) missed monthly payments in the amount of $3,676.01 each.

15    d)   Six (6) missed monthly payments in the amount of $3,307.80 each.

16    e)   Thirteen (13) missed monthly payments in the amount of $3,087.73 each.

17    f)   Six (6) missed monthly payments in the amount of $3,045.28 each.

18    g)   Six (6) missed monthly payments in the amount of $3,129.70 each.

19    h)   One (1) missed monthly payments in the amount of $3,171.95 each.

20    i)   Late charges in the amount of $6,830.86.

21    j)   Escrow shortage in the amount of $1,482.25.

22    k)   Property inspection fees in the amount of $665.00.

23    l)   Attorney fees and expenses in the amount of $3,552.41.

24    m)  Bankruptcy fees and cots in the amount of $1,535.00.

25    10.   Debtors will have to increase the payment through the Chapter 13 Plan to this

26 Creditor by approximately $2,931.42 monthly in order to cure Creditor's pre-petition arrears over a

27 period not to exceed sixty (60) months.

28 /././

1        11.    The aforementioned multiple bankruptcy filings have prevented Creditor from

2 lawfully exercising its state law remedies. Creditor believes that this filing is in bad faith,

3 constitutes a misuse of the Bankruptcy Code and was done solely for the purpose of preventing

4 Creditor from proceeding to obtain possession of its property, which has been prejudicial to this

5 Creditor.

6        Creditor now objects to the Chapter 13 Plan filed herein by the Debtors.

7 <div align="center">**II.**</div>

8 <div align="center">**<u>ARGUMENT</u>**</div>

9        Application of the provisions of 11 United States Code section 1325 determines when a plan

10 shall be confirmed by the Court. Based on the above sections, as more fully detailed below, this

11 Plan cannot be confirmed as proposed.

12 **A.    THE PLAN HAS NOT BEEN PROPOSED IN GOOD FAITH**
       11 U.S.C. § 1325(a)(3).

13

14        The aforementioned multiple bankruptcy filings have prevented Creditor from lawfully

15 exercising its state law remedies. Creditor believes that this filing is in bad faith, constitutes a

16 misuse of the Bankruptcy Code and was done solely for the purpose of preventing Creditor from

17 proceeding to obtain possession of its property, which has been prejudicial to this Creditor.

18 **B.    DOES NOT MEET FULL VALUE REQUIREMENT**
       11 U.S.C. § 1325(a)(5)(B)(ii).

19

20        The amount of arrearage in Debtors' Chapter 13 Plan is incorrect. The pre-petition arrears

21 specified in the Chapter 13 Plan are $0.00. The actual pre-petition arrears equal $175,885.15, based

22 on Creditor's forthcoming Proof of Claim. As a result, the Plan fails to satisfy 11 U.S.C. §

23 1325(a)(5)(B)(ii).

24 **C.    PROMPT CURE OF PRE-PETITION ARREARS**
       11 U.S.C. § 1322(d).

25

26        Debtors will have to increase the payment through the Chapter 13 Plan to this Creditor by

27 approximately $2,931.42 monthly in order to cure Creditor's pre-petition arrears over a period not to

28 exceed sixty (60) months.

/././

**D.    FEASIBILITY**
11 U.S.C. § 1325(a)(6); 11 U.S.C. § 1322(d).

1.    Debtors' Schedule J indicates that the Debtors have disposable income of <$200.00>. However, Debtors propose to apply $50.00 monthly to the Chapter 13 Plan.  Accordingly, Debtors lack sufficient monthly disposable income with which to fund this Plan.

2.    Debtors' Schedule J indicates that the Debtors have disposable income of <$200.00>. However, Debtors will be required to apply $2,981.42 monthly to the Chapter 13 Plan in order to provide for a prompt cure of Creditor's pre-petition arrears.  Accordingly, Debtors lack sufficient monthly disposable income with which to fund this Plan.

**E.    DISMISSAL FOR CAUSE**
11 U.S.C. §1307; 11 U.S.C 109(g)

Looking to the totality of the circumstances, a court may dismiss a chapter 13 case for lack of good faith in commencing the case.  In re Love 952 F2d 1350 (7th Cir. 1992).  *In Accord:* In re Leavitt 38 C.B.C.2d 416, 209 B.R. 935 (B.A.P. 9th Cir. 1997).  Filing a Chapter 13 case solely to dispute a debt and thwart collection efforts is bad faith warranting dismissal of the case.  In re Brooks 39 C.B.C.2d 198, 216 B.R. 838 (Bankr. N.D. Okla. 1998).  For the foregoing reasons, Creditor requests that this court dismiss the Debtors' Chapter 13 case as it appears that he has misused the bankruptcy system and has purposefully thwarted Creditor from enforcing its rightful remedies.

WHEREFORE, Creditor respectfully requests:

1.    That confirmation of the Debtors' Chapter 13 Plan be denied with prejudice;

2.    That Debtor's case be dismissed with a 180-day bar against refiling under any Chapter pursuant to Title 11 United States Code section 109(g);

3.    Alternatively, that the Plan be amended to reflect that the pre-petition arrears listed in Creditor's Proof of Claim be paid within a period not exceeding sixty (60) months;

4.    Alternatively, that the Plan be amended to reflect that Creditor maintains a fully secured claim which is subject to an Adequate Protection Order requiring the Debtors to maintain current Plan payments to the Chapter 13 Trustee; and

1

2          5.       For such other and further relief as this Court deems just and proper.

3                                              Respectfully submitted,

4

5    Dated:  September 6, 2012                 PITE DUNCAN, LLP

6

7                                              /s/ Robert P. Zahradka (SBN 282706)
                                               ROBERT P. ZAHRADKA
8                                              Attorneys    for    US    BANK    NATIONAL
                                               ASSOCIATION, AS TRUSTEE FOR SASCO 2007-
9                                              WF1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ADJUSTABLE RATE/BALLOON NOTE

(6-Month LIBOR Index-Rate Caps)
(Assumable during Life of Loan)
(First Business Day of Preceding Month Lookback)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER. THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| NOVEMBER 17, 2006 | SANTA ANA | CALIFORNIA |
|---|---|---|
| Date | City | State |

11431 JENKINS STREET, ARTESIA, CA  90701
(Property Address)

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $  536,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is _____
WELLS FARGO BANK, N.A. .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of  6.950%.

The interest rate I will pay will change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the first day of each month beginning on  JANUARY 1, 2007 .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.

If, on  DECEMBER 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will make my monthly payments at WELLS FARGO BANK, N.A.
P.O. BOX 17339, BALTIMORE, MD  21297-1339
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $  3,311.43 , which is based on a 40 year amortization ("Initial Amortization Period"). This amount may change.

### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the first day of  DECEMBER, 2008 ,
and may change on that day every  6th  month thereafter. Each date on which my interest rate could change is called a "Change Date."

ADJUSTABLE RATE/BALLOON NOTE-6-Month LIBOR Index (Assumable during the Life of Loan)

Initials                      1 of 5                     FIXXX    REV. 11/7/06

EXHIBIT A

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six-month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in "The Wall Street Journal." The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

## (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding four and seven-eighths percentage point(s) ( 4.875%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full based on the remaining term in my Initial Amortization Period at my new interest rate in substantially equal payments. The results of this calculation will be the new amount of my monthly payment.

## (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 9.950% or less than 4.875 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point(s) ( 1.000%) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 12.950%.

## (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

## (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then:  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.



## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Initials: 

3 of 5                                                          IO009E REV. 03/02/06

EXHIBIT A

This space intentionally left blank

**Tranfer of the Property or a Beneficial Interest in Borrower.** As used in this section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



Initials:

4 of 5                    IPI109G          REV. 08/04/06

**EXHIBIT A**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
CARL WHALEY                        -Borrower

_____ (Seal)
LAVON BOYD WHALEY                  -Borrower

IO0081 REV. 06/23/06

EXHIBIT A

## ADDENDUM TO NOTE

### (Prepayment)

THIS ADDENDUM is made this ..17th...... day of ..NOVEMBER..... 2006 ........... and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1. The Note is modified to provide that I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a full prepayment or a partial prepayment at any time without paying any penalty. However, if within the first ..two.... (.2..) year(s) after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge as follows:

..... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three precent (3%) of the original principal amount. If within the second year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the original principal amount. If within the third year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to one percent (1%) of the original principal amount.

..X... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three precent (3%) of the original principal amount. If within the second year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the original principal amount.

..... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three precent (3%) of the original principal amount.

2. In the event the maturity of the Note is accelerated for any reason during the applicable period of the prepayment charge, then the prepayment charge set forth herein shall be due and payable.

3. All interest, fees and other amounts charged or accruing in connection with the Note which are considered "interest" within the meaning of section 85 of the National Bank Act (12 USC & 85; 12 C.F.R. & 7.4001(a)) shall be governed by and interpreted under South Dakota law. In all other respects, the Note and all related documents, as well as the rights, remedies, and duties of the Lender and the Borrower(s), shall be governed and interpreted by federal law with respect to national banks and, to the extent not preempted by federal law, the consumer protection laws of the state in which the real estate is located.

4. All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

Dated: 11/17/06

CARL WHALEY                                                        (Seal)
                                                                   -Borrower

LAVON BOYD WHALEY                                                  (Seal)
                                                                   -Borrower

EXHIBIT A

Recording Requested By:

**WELLS FARGO BANK, N.A.**
**5540 FERMI COURT #200**
**CARLSBAD, CA  92008-**

11/28/06

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

**20062622755**

Return To:
**WELLS FARGO BANK, N.A.**
**FINAL DOCUMENTS X9999-01M**
**1000 BLUE GENTIAN ROAD**
**EAGAN, MN  55121-1663**
Prepared By:
**DEBRA L. FRASER**
**WELLS FARGO BANK, N.A.**
**5540 FERMI COURT #200**
**CARLSBAD, CA  92008-**

——————————————— [Space Above This Line For Recording Data] ———————————————

# DEED OF TRUST                          0156767055

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **NOVEMBER 17, 2006**      ,
together with all Riders to this document.
**(B) "Borrower"** is
**CARL WHALEY AND LA VON BOYD WHALEY, HUSBAND AND WIFE AS JOINT TENANTS**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is  WELLS FARGO BANK, N.A.

Lender is a **National Association**
organized and existing under the laws of  **THE UNITED STATES OF AMERICA**

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Page 1 of 18        Initials: _CW_
_jpw_

FORM 3005    1/01

SCA01    Rev 11/09/00

EXHIBIT B

*3*

Lender's address is
**P. O. BOX 5137, DES MOINES, IA  50306-5137**
Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is  **FIDELITY NATIONAL TITLE INSURANCE COMPANY**

**(E) "Note "** means the promissory note signed by Borrower and dated **NOVEMBER 17, 2006**
The Note states that Borrower owes Lender **FIVE HUNDRED THIRTY-SIX THOUSAND
AND NO/100**                                                                                   Dollars
(U.S. $ .....536,000.00...........) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than   **DECEMBER 1, 2036**
**(F) "Property"** means the property that is described below under the heading "Transfer of
Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

<div align="center">Prepayment Rider</div>

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as
well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a
condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an
electronic terminal, telephonic instrument, computer, or magnetic tape so as to order,
instruct, or authorize a financial institution to debit or credit an account. Such term includes,
but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers
initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or
(iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be
amended from time to time, or any additional or successor legislation or regulation that

<div align="right">EXHIBIT B</div>

*4*

governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA. **(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's convenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

    **County**      of    **LOS ANGELES**    :
    [Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]

**LEGAL DESCRIPTION IS ATTACHED HERETO AS SCHEDULE "A" AND MADE A PART HEREOF.**

Parcel ID Number:               which currently has the address of
**11431 JENKINS STREET**             [Street]
**ARTESIA**    [City] , California   **90701**  [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

SCA03  Rev 11/09/00      Page 3 of 18    Initials:      FORM 3005  1/01

EXHIBIT B

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the
Note and any prepayment charges and late charges due under the Note. Borrower shall
also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and
this Security Instrument shall be made in U.S. currency. However, if any check or other
instrument received by Lender as payment under the Note or this Security Instrument is
returned to Lender unpaid, Lender may require that any or all subsequent payments due
under the Note and this Security Instrument be made in one or more of the following forms,
as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's
check or cashier's check, provided any such check is drawn upon an institution whose
deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds
Transfer.

Payments are deemed received by Lender when received at the location designated in
the Note or at such other location as may be designated by Lender in accordance with the
notice provisions in Section 15. Lender may return any payment or partial payment if the
payment or partial payments are insufficient to bring the Loan current. Lender may accept
any payment or partial payment insufficient to bring the Loan current, without waiver of any
rights hereunder or prejudice to its rights to refuse such payment or partial payments in the
future, but Lender is not obligated to apply such payments at the time such payments are
accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender
need not pay interest on unapplied funds. Lender may hold such unapplied funds until
Borrower makes payment to bring the Loan current. If Borrower does not do so within a
reasonable period of time, Lender shall either apply such funds or return them to Borrower.
If not applied earlier, such funds will be applied to the outstanding principal balance under
the Note immediately prior to foreclosure. No offset or claim which Borrower might have
now or in the future against Lender shall relieve Borrower from making payments due under
the Note and this Security Instrument or performing the covenants and agreements secured
by this Security Instrument.
**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2,
all payments accepted and applied by Lender shall be applied in the following order of
priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due
under Section 3. Such payments shall be applied to each Periodic Payment in the order in
which it became due. Any remaining amounts shall be applied first to late charges, second
to any other amounts due under this Security Instrument, and then to reduce the principal
balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which
includes a sufficient amount to pay any late charge due, the payment may be applied to the
delinquent payment and the late charge. If more than one Periodic Payment is outstanding,
Lender may apply any payment received from Borrower to the repayment of the Periodic
Payments if, and to the extent that, each payment can be paid in full. To the extent that any
excess exists after the payment is applied to the full payment of one or more Periodic
Payments, such excess may be applied to any late charges due. Voluntary prepayments
shall be applied first to any prepayment charges and then as described in the Note.

SCA04    Rev 11/09/00          Page 4 of 18       Initials:          FORM 3005   1/01

EXHIBIT B

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be

SCA05    Rev 11/09/00            Page 5 of 18        Initials:            FORM 3005    1/01

EXHIBIT B

required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination

EXHIBIT B

or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In

EXHIBIT B

*9*

either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or

EXHIBIT B

10

(c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

   **10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

SCA09   Rev 11/13/00                    Page 9 of 18          Initials:                FORM 3005   1/01

EXHIBIT B

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exhange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

SCA10   Rev 09/22/00            Page 10 of 18       Initials:        FORM 3005   1/01

EXHIBIT B

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by

EXHIBIT B

13

this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provision of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly



EXHIBIT B

requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



EXHIBIT B

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer or servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

SCA14   Rev 12/27/00          Page 14 of 18          Initials:          FORM 3005   1/01

EXHIBIT B

(16

The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environment Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or**

SCA15    Rev 10/13/00              Page 15 of 18        Initials:              FORM 3005    1/01

EXHIBIT B

17

before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

SCA16    Rev 09/22/00                    Page 16 of 18              Initials:               FORM 3005    1/01

EXHIBIT B

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                        CARL WHALEY                         Borrower

_____        _____ (Seal)
                                        LAVON BOYD WHALEY                    Borrower

SCA17    Rev  12/27/00               Page 17 of 18         Initials:         FORM 3005    1/01

EXHIBIT B

19

**State of California,**                                          ss:

**County of** Los Angeles

On Nov 17, 2006 before me, Elisha Landrum, Notary Public personally appeared

**CARL WHALEY AND LA VON BOYD WHALEY, HUSBAND AND WIFE AS JOINT TENANTS**

, ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) ~~is/are subscribed to the within~~ instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

**WITNESS my hand and official seal.**

ELISHA LANDRUM
Commission # 1390051
Notary Public - California
Riverside County
My Comm. Expires Dec 14, 2006

_Elisha Landrum_ ——— (Seal)

SCA18   Rev 10/17/00          Page 18 of 18          Initials:           FORM 3005   1/01

EXHIBIT B

# ADJUSTABLE RATE/BALLOON RIDER

### (6-Month LIBOR Index-Rate Caps)
### (Assumable during Life of Loan)
### (First Business Day of Preceding Month Lookback)

This Adjustable Rate Rider is made this ...17th.day.of.NOVEMBER,.2006................. , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to ...................................... .WELLS.FARGO.BANK,.N.A........................................................................................................ (the "Lender") of the same date and covering the property described in the Security Instrument and located at: .11431.JENKINS.STREET,.ARTESIA,.CA..90701............................................................................................
<center>(Property Address)</center>

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER. THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an Initial Interest Rate of ..6.950.... %. The Note provides for changes in the interest rate and the monthly payments as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of ..DECEMBER,.2008......................., and may change on that day every .6.th month thereafter. Each date on which my interest rate could change is called a " Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six-month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in "The Wall Street Journal." The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**ADJUSTABLE RATE/BALLOON RIDER-6-Month LIBOR Index (Assumable during the Life of Loan)**

<center>*page 1*</center>

<div align="right">P1136A Rev. 10/11/06</div>

<div align="right" style="font-size:2em">EXHIBIT B</div>

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **four and seven-eighths percentage point(s) (   4.875%)**..........................................................to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full based on the remaining term in my initial amortization period at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.950**   % or less than   **4.875**   % . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than   **one percentage point(s) (   1.000%)** from the rate of interest I have been paying for the preceding   **6**   months. My interest rate will never be greater than **12.950**   %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

*page 2*

P1136C Rev. 11/7/06

EXHIBIT B

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

This space intentionally left blank

**Transfer of the Property or a Beneficial Interest in Borrower.**

As used in this section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**EXHIBIT B**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Adjustable Rate Rider.

_____ (Seal)
CARL WHALEY                                -Borrower

_____ (Seal)
LAVON BOYD WHALEY                          -Borrower

*page 4*                                   IO036G  Rev. 03/30/05

**EXHIBIT B**

# PREPAYMENT RIDER

THIS PREPAYMENT RIDER is made this ....17th...... day of ....NOVEMBER.....2006....... , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower")      to      secure      Borrower's      Note      to      .............................................. ....WELLS FARGO BANK, N.A..........................................................................of the same date and covering the Property described in the Security Instrument and located at: 11431 JENKINS STREET, ARTESIA, CA 90701...............................................

**(Property Address)**

    **PREPAYMENT COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:**

    I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

    Except as provided below, I may make a full prepayment or a partial prepayment at any time without paying any penalty. However, if within the first .two...... (..2..) year(s) after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge as follows:

...... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three percent (3%) of the original principal amount. If within the second year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the original principal amount. If within the third year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to one percent (1%) of the original principal amount.

<div align="right">

(Page 1 of 2)
PP010A  Rev.  09/13/05

</div>

Prepayment Rider

_X_ If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three percent (3%) of the original principal amount. If within the second year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the original principal amount.

..... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three percent (3%) of the original principal amount.

In the event the maturity of the Note is accelerated for any reason during the applicable period of the prepayment charge, then the prepayment charge set forth herein shall be due and payable.

All interest, fees and other amounts charged or accruing in connection with the Note which are considered "interest" within the meaning of Section 85 of the National Bank Act (12 USC 85; 12 C.F.R. & 7.4001(a)) shall be governed by and interpreted under South Dakota law. In all other respects, the Note and all related documents, as well as the rights, remedies, and duties of the Lender and the Borrower(s), shall be governed and interpreted by federal law with respect to national banks and, to the extent not preempted by federal law, the consumer protection laws of the state in which the real estate is located.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

_____(Seal)
CARL WHALEY                         -Borrower

_____(Seal)
LAVON BOYD WHALEY                   -Borrower

Prepayment Rider

PP010C  Rev. 05/31/06

(Page 2 of 2)

EXHIBIT B

Lot 6 of Tract no. 31311 in City of Artesia, County of Los Angeles, State of California as per map recorded in book 881 pages 65 and 66 of maps in the Office of the County Recorder of said County.

EXHIBIT B

**This page is part of your document - DO NOT DISCARD**

**06 2622755**

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
11/28/06 AT 08:00am**

# TITLE(S) :

L E A D    S H E E T

| FEE | | D.T.T. | |
|---|---|---|---|
| FEE $ 79 VV | | | |
| DAF $ 2- | | | |
| C-20 | | | |

25

NOTIFICATION SENT-$4

CODE
20

CODE
19

CODE
9

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**       **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

EXHIBIT B

**This page is part of your document - DO NOT DISCARD**



# 20120470022



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**03/28/12 AT 09:12AM**

| | |
|---|---:|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201203280090017

**00005542027**

003873551

**SEQ:**
**01**

DAR - Mail (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E492350

EXHIBIT C

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN  55440-9790



03/28/2012

*20120470022*

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Los Angeles, California
 "WHALEY"
**SELLER'S LENDER ID#: C38**

For Value Received, WELLS FARGO BANK, NATIONAL ASSOCIATION hereby grants, assigns and transfers to US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2007-WF1 at 4801 FREDERICA STREET, OWENSBORO, KY 42301 all beneficial interest under that certain Deed of Trust dated 11/17/2006 , in the amount of $536,000.00, executed by CARL WHALEY AND LA VON BOYD WHALEY, HUSBAND AND WIFE AS JOINT TENANTS to WELLS FARGO BANK, NATIONAL ASSOCIATION and Recorded:  11/28/2006  as Instrument No.: 06 2622755 in the County of Los Angeles, State of California.

 Therein described or referred to, in said Deed of Trust, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

 WELLS FARGO BANK, NATIONAL ASSOCIATION
On 2/23/12

Andrew Colligan
Vice President Loan Documentation

EXHIBIT C

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

On __2/23/12__, before me, Angela Marie Williams _____, a Notary Public in Dakota County in the
State of Minnesota, personally appeared __Andrew Collyan_____, Vice President Loan
Documentation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

__Angela Marie Williams__

Notary Expires: 1/31/2017

ANGELA MARIE WILLIAMS
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2017

(This area for notarial seal)

EXHIBIT C

DISMISSED, CLOSED, Incomplete

# U.S. Bankruptcy Court
## Central District Of California (Los Angeles)
### Bankruptcy Petition #: 2:09-bk-17138-ER

*Assigned to:* Ernest M. Robles

Chapter 7

Voluntary

No asset

*Date filed:* 03/27/2009
*Date terminated:* 02/18/2010
*Debtor dismissed:* 07/13/2009

*Debtor disposition:* Dismissed for Other Reason

*Debtor*
**Lavon Whaley**
44489 Town Center Wy
D-274
Palm Desert, CA 92260
LOS ANGELES-CA
SSN / ITIN: xxx-xx-6142

represented by **Lavon Whaley**
PRO SE

*Trustee*
**James L Brown (TR)**
Law Offices of James L. Brown
3660 Wilshire Blvd., Suite 1118
Los Angeles, CA 90010
(213) 251-2330

*U.S. Trustee*
**United States Trustee (LA)**
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

| Filing Date | # | Docket Text |
| --- | --- | --- |
| | | Chapter 7 Voluntary Petition . Receipt Number O, Fee Amount $299 Filed by Lavon Whaley Statement of Intent due 4/27/2009. Section 316 Incomplete Filings due by 5/11/2009. Schedule B due 4/13/2009. Schedule C due 4/13/2009. Schedule E due 4/13/2009. Schedule F due 4/13/2009. Schedule G due 4/13/2009. Schedule H due 4/13/2009. Schedule I due 4/13/2009. Schedule J due 4/13/2009. Statement of Financial Affairs due 4/13/2009. Statement - Form 22A Due: 4/13/2009.Statement of Related Case due 4/13/2009. Statement of assistance of non-attorney due 4/13/2009. Cert. of Credit Counseling due by 4/13/2009. Statistical Summary due |

EXHIBIT D

| | | |
|---|---|---|
| 03/27/2009 | 1 | 4/13/2009. Debtor Certification of Employment Income due by 4/13/2009. Incomplete Filings due by 4/13/2009. (Moulton, Sheila) (Entered: 03/27/2009) |
| 03/27/2009 | 2 | Meeting of Creditors with 341(a) meeting to be held on 04/24/2009 at 04:30 PM at RM 101, 725 S Figueroa St., Los Angeles, CA 90017. Objections for Discharge due by 06/23/2009. (Moulton, Sheila) (Entered: 03/27/2009) |
| 03/27/2009 | 3 | Statement of Social Security Number(s) Form B21 Filed by Debtor Lavon Whaley . (Moulton, Sheila) (Entered: 03/27/2009) |
| 03/27/2009 | 4 | Notice of Requirement to Complete Course in Financial Management (BNC) . (Moulton, Sheila) (Entered: 03/27/2009) |
| 03/27/2009 | | Receipt of Chapter 7 Filing Fee - $299.00 by 91. Receipt Number 20055026. (admin) (Entered: 03/30/2009) |
| 03/29/2009 | 5 | BNC Certificate of Service (RE: related document(s)2 Meeting (Chapter 7)) No. of Notices: 6. Service Date 03/29/2009. (Admin.) (Entered: 03/29/2009) |
| 03/29/2009 | 6 | BNC Certificate of Service (RE: related document(s)1 Voluntary Petition (Chapter 7) filed by Debtor Lavon Whaley) No. of Notices: 2. Service Date 03/29/2009. (Admin.) (Entered: 03/29/2009) |
| 03/29/2009 | 7 | BNC Certificate of Service (RE: related document(s)1 Voluntary Petition (Chapter 7) filed by Debtor Lavon Whaley) No. of Notices: 2. Service Date 03/29/2009. (Admin.) (Entered: 03/29/2009) |
| 03/29/2009 | 8 | BNC Certificate of Service (RE: related document(s)4 Notice of Requirement to Complete Course in Financial Management (BNC)) No. of Notices: 3. Service Date 03/29/2009. (Admin.) (Entered: 03/29/2009) |
| 04/01/2009 | 9 | Request for special notice Filed by Creditor AmeriCredit Financial Services, Inc.. (Whitten, Alice) (Entered: 04/01/2009) |
| 04/03/2009 | 10 | Continuance of Meeting of Creditors Filed by Trustee James L Brown. 341(a) meeting to be held on 4/29/2009 at 04:00 PM at RM 102, 725 S Figueroa St., Los Angeles, CA 90017. (Brown, James) (Entered: 04/03/2009) |
| | | Request for courtesy Notice of Electronic Filing (NEF) Filed by |

**EXHIBIT D**

| | | |
|---|---|---|
| 04/15/2009 | 11 | Christopher M McDermott on behalf of Courtesy NEF. (McDermott, Christopher) (Entered: 04/15/2009) |
| 04/27/2009 | 12 | Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 5743 South Rimpau Boulevard, Los Angeles Area, CA 90043 . Fee Amount $150, Filed by Creditor IndyMac Federal Bank FSB, its assignees and/or successors (Attachments: 1 Exhibit) (Wong, Jennifer) (Entered: 04/27/2009) |
| 04/27/2009 | | Receipt of Motion for Relief from Stay - Real Property(2:09-bk-17138-ER) [motion,nmrp] ( 150.00) Filing Fee. Receipt number 9042309. Fee amount 150.00. (U.S. Treasury) (Entered: 04/27/2009) |
| 04/27/2009 | | Hearing Set (RE: related document(s)12 Motion for Relief from Stay - Real Property filed by Creditor IndyMac Federal Bank FSB, its assignees and/or successors) The Hearing date is set for 6/1/2009 at 10:00 AM at Crtrm 1568, 255 E Temple St., Los Angeles, CA 90012. The case judge is Ernest M. Robles (Lomeli, Lydia R.) (Entered: 04/28/2009) |
| 04/29/2009 | 13 | Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 11431 Jenkins Street, Artesia, California 90701 *With Proof of Service*. Fee Amount $150, Filed by Creditor US Bank National Association, as Trustee for SASCO 2007-WF1, its successors and/or assigns, Movant (Attachments: 1 Exhibit 1 2 Exhibit 2 3 Exhibit (s) 3 & 4) (McDermott, Christopher) (Entered: 04/29/2009) |
| 04/29/2009 | 14 | Declaration re: *Supplemental Declaration of Broker, James Galloway, in Support of Motion for Relief from Automatic Stay, With Proof of Service* Filed by Creditor US Bank National Association, as Trustee for SASCO 2007-WF1, its successors and/or assigns, Movant (RE: related document(s)13 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 11431 Jenkins Street, Artesia, California 90701 *With Proof of Service*. Fee Amount $150,). (McDermott, Christopher) (Entered: 04/29/2009) |
| 04/29/2009 | | Receipt of Motion for Relief from Stay - Real Property(2:09-bk-17138-ER) [motion,nmrp] ( 150.00) Filing Fee. Receipt number 9086951. Fee amount 150.00. (U.S. Treasury) (Entered: 04/29/2009) |
| | | Hearing Set (RE: related document(s)13 Motion for Relief from |

| | | |
|---|---|---|
| 04/29/2009 | | Stay - Real Property filed by Creditor US Bank National Association, as Trustee for SASCO 2007-WF1, its successors and/or assigns, Movant) The Hearing date is set for 6/1/2009 at 10:00 AM at Crtrm 1568, 255 E Temple St., Los Angeles, CA 90012. The case judge is Ernest M. Robles (Lomeli, Lydia R.) (Entered: 05/01/2009) |
| 04/30/2009 | 15 | 341 Meeting of Creditors Continued on 6/4/2009 at 12:00 PM at RM 102, 725 S Figueroa St., Los Angeles, CA 90017 (Brown, James) (Entered: 04/30/2009) |
| 06/10/2009 | 16 | Order Granting Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF) (Related Doc # 13) Signed on 6/10/2009 (Walter, Earnestine) (Entered: 06/10/2009) |
| 06/12/2009 | 17 | Trustee's Request to Dismiss Debtor(s) for Failure to Appear at 341(a) Meeting of Creditors (Chapter 7) - Dismiss **Debtor** Filed by Trustee James L Brown. (Brown, James) (Entered: 06/12/2009) |
| 06/12/2009 | 18 | BNC Certificate of Service - PDF Document. (RE: related document(s)16 Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF)) No. of Notices: 8. Service Date 06/12/2009. (Admin.) (Entered: 06/12/2009) |
| 06/18/2009 | 19 | Order Granting Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF) (Related Doc # 12) Signed on 6/18/2009 (Lomeli, Lydia R.) (Entered: 06/18/2009) |
| 06/20/2009 | 20 | BNC Certificate of Service - PDF Document. (RE: related document(s)19 Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF)) No. of Notices: 8. Service Date 06/20/2009. (Admin.) (Entered: 06/20/2009) |
| 07/13/2009 | 21 | ORDER and notice of dismissal for failure to appear at 341(a) meeting - **Debtor** Dismissed. (BNC) Signed on 7/13/2009. (Lomeli, Lydia R.) (Entered: 07/13/2009) |
| 07/15/2009 | 22 | BNC Certificate of Service (RE: related document(s)21 ORDER and notice of dismissal for failure to appear at 341(a) meeting (BNC)) No. of Notices: 9. Service Date 07/15/2009. (Admin.) (Entered: 07/15/2009) |
| 02/18/2010 | 23 | Bankruptcy Case Closed - DISMISSED (Caldway, Valecia) (Entered: 02/18/2010) |

EXHIBIT D

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/31/2012 11:45:57 | | | |
| **PACER Login:** | ps4586 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:09-bk-17138-ER Fil or Ent: filed To: 8/31/2012 Doc From: 0 Doc To: 99999999 Term: included Format: html |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

EXHIBIT D

Incomplete, DISMISSED, CLOSED

# U.S. Bankruptcy Court
## Central District Of California (Los Angeles)
## Bankruptcy Petition #: 2:09-bk-28003-ER

|  |  |
|---|---|
| *Date filed:* | 07/14/2009 |
| *Date terminated:* | 04/28/2010 |
| *Debtor dismissed:* | 08/17/2009 |

*Assigned to:* Ernest M. Robles
Chapter 7
Voluntary
No asset

*Debtor disposition:* Dismissed for Failure to File Information

**Debtor**                                    represented by **Carl Whaley**
**Carl Whaley**                                              PRO SE
11431 Jenkins St
Artesia, CA 90701
LOS ANGELES-CA
562-572-1659
SSN / ITIN: xxx-xx-7069

**Trustee**
**Carolyn A Dye (TR)**
Law Offices of Carolyn Dye
3435 Wilshire Blvd, Suite 990
Los Angeles, CA 90010
213-368-5000

*U.S. Trustee*
**United States Trustee (LA)**
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

| Filing Date | # | Docket Text |
|---|---|---|
|  |  | Chapter 7 Voluntary Petition . Receipt Number O, Fee Amount $299 Filed by Carl Whaley Statement of Intent due 8/13/2009. Section 316 Incomplete Filings due by 8/28/2009. Schedule B due 7/29/2009. Schedule C due 7/29/2009. Schedule E due 7/29/2009. Schedule F due 7/29/2009. Schedule G due 7/29/2009. Schedule H due 7/29/2009. Schedule I due 7/29/2009. Schedule J due 7/29/2009. Statement of Financial Affairs due 7/29/2009. Statement - Form 22A Due: 7/29/2009.Statement of Related Case due 7/29/2009. Statement of assistance of non-attorney due 7/29/2009. Declaration concerning debtors schedules due 7/29/2009. Statistical |

**EXHIBIT E**

| 07/14/2009 | 1 | Summary due 7/29/2009. Debtor Certification of Employment Income due by 7/29/2009. Incomplete Filings due by 7/29/2009. (Banderas, Cynthia) (Entered: 07/14/2009) |
| 07/14/2009 | 2 | Meeting of Creditors with 341(a) meeting to be held on 08/13/2009 at 10:00 AM at RM 101, 725 S Figueroa St., Los Angeles, CA 90017. Objections for Discharge due by 10/13/2009. (Banderas, Cynthia) (Entered: 07/14/2009) |
| 07/14/2009 | 3 | Statement of Social Security Number(s) Form B21 Filed by Debtor Carl Whaley . (Banderas, Cynthia) (Entered: 07/14/2009) |
| 07/14/2009 | 4 | Certificate of Credit Counseling Filed by Debtor Carl Whaley . (Banderas, Cynthia) (Entered: 07/14/2009) |
| 07/14/2009 | 5 | Notice of Requirement to Complete Course in Financial Management (BNC) . (Banderas, Cynthia) (Entered: 07/14/2009) |
| 07/14/2009 | | Receipt of Chapter 7 Filing Fee - $299.00 by 02. Receipt Number 20061720. (admin) (Entered: 07/20/2009) |
| 07/16/2009 | 6 | BNC Certificate of Service (RE: related document(s)2 Meeting (Chapter 7)) No. of Notices: 6. Service Date 07/16/2009. (Admin.) (Entered: 07/16/2009) |
| 07/16/2009 | 7 | BNC Certificate of Service (RE: related document(s)1 Voluntary Petition (Chapter 7) filed by Debtor Carl Whaley) No. of Notices: 2. Service Date 07/16/2009. (Admin.) (Entered: 07/16/2009) |
| 07/16/2009 | 8 | BNC Certificate of Service (RE: related document(s)1 Voluntary Petition (Chapter 7) filed by Debtor Carl Whaley) No. of Notices: 2. Service Date 07/16/2009. (Admin.) (Entered: 07/16/2009) |
| 07/16/2009 | 9 | BNC Certificate of Service (RE: related document(s)5 Notice of Requirement to Complete Course in Financial Management (BNC)) No. of Notices: 3. Service Date 07/16/2009. (Admin.) (Entered: 07/16/2009) |
| 08/04/2009 | 10 | Request for courtesy Notice of Electronic Filing (NEF) Filed by Josephine E Piranio on behalf of Courtsey NEF. (Piranio, Josephine) (Entered: 08/04/2009) |
| | | ORDER and notice of dismissal for failure to file schedules, |

**EXHIBIT E**

| | | |
|---|---|---|
| 08/17/2009 | 11 | statements, and/or plan - **Debtor** Dismissed. (BNC) Signed on 8/17/2009. (Mercene, Bernardita T.) CORRECTION: Notice not sent. See notice in entry #12 Modified on 9/9/2009 (Diep-Shen, Winnie). (Entered: 08/17/2009) |
| 08/17/2009 | 12 | ORDER and notice of dismissal for failure to file schedules, statements, and/or plan - **Debtor** Dismissed. (BNC) Signed on 8/17/2009. (Mercene, Bernardita T.) (Entered: 08/17/2009) |
| 08/19/2009 | 13 | BNC Certificate of Service (RE: related document(s)12 ORDER and notice of dismissal for failure to file schedules, statements, and/or plan (BNC)) No. of Notices: 7. Service Date 08/19/2009. (Admin.) (Entered: 08/19/2009) |
| 08/23/2009 | | Chapter 7 Trustee's Report of No Distribution: I, Carolyn A Dye, having been appointed trustee of the estate of the above-named debtor(s), report that this case was dismissed, converted, or reassigned. I have neither received any property nor paid any monies on account of this estate. Pursuant to Fed R Bank P 5009, I hereby certify that the chapter 7 estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 0 months. Assets Abandoned: Not Applicable, Assets Exempt: Not Applicable, Claims Scheduled: Not Applicable, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment: Not Applicable. Filed by Trustee Carolyn A Dye. (Dye, Carolyn) (Entered: 08/23/2009) |
| 04/28/2010 | 14 | Bankruptcy Case Closed - DISMISSED (Lomeli, Lydia R.) (Entered: 04/28/2010) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/31/2012 11:44:13 | | | |
| **PACER Login:** | ps4586 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:09-bk-28003-ER Fil or Ent: filed To: 8/31/2012 Doc From: 0 Doc To: 99999999 Term: included Format: html |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**EXHIBIT E**

Case 2:12-bk-36080-TD    Doc 16    Filed 09/06/12    Entered 09/06/12 09:57:14    Desc
Main Document    Page 50 of 59

EXHIBIT E

**CLOSED**

# U.S. Bankruptcy Court
## Central District Of California (Los Angeles)
### Bankruptcy Petition #: 2:11-bk-61521-TD

|  |  |
|---|---|
| *Assigned to:* Thomas B. Donovan | *Date filed:* 12/20/2011 |
| Chapter 7 | *Date terminated:* 03/29/2012 |
| Voluntary | *Debtor dismissed:* 02/14/2012 |
| No asset | *Joint debtor dismissed:* 02/14/2012 |

*Debtor disposition:* Dismissed for Failure to File Information
*Joint debtor disposition:* Dismissed for Failure to File Information

| | |
|---|---|
| ***Debtor*** | represented by **Carl Douglas Whaley** |
| **Carl Douglas Whaley** | PRO SE |
| 11431 Jenkins St | |
| Artesia, CA 90701 | |
| LOS ANGELES-CA | |
| 562-572-1659 | |
| SSN / ITIN: xxx-xx-7069 | |
| | |
| ***Joint Debtor*** | represented by **LaVon Boyd Whaley** |
| **LaVon Boyd Whaley** | PRO SE |
| 11431 Jenkins St | |
| Artesia, CA 90701 | |
| LOS ANGELES-CA | |
| 562-572-1659 | |
| SSN / ITIN: xxx-xx-6142 | |

***Trustee***
**Alfred H Siegel (TR)**
Siegel, Gottlieb, Mangel & Levine
15233 Ventura Blvd., 9th Floor
Sherman Oaks, CA 91403-2201
(818) 325-8441

***U.S. Trustee***
**United States Trustee (LA)**
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

| Filing Date | # | Docket Text |
|---|---|---|
|  |  | Chapter 7 Voluntary Petition . Fee Amount $306 Filed by Carl Douglas Whaley , LaVon Boyd Whaley Statement of Intent due |

**EXHIBIT F**

| | | |
|---|---|---|
| 12/20/2011 | 1 | 1/19/2012. Schedule B due 1/3/2012. Schedule C due 1/3/2012. Schedule E due 1/3/2012. Schedule F due 1/3/2012. Schedule G due 1/3/2012. Schedule H due 1/3/2012. Schedule I due 1/3/2012. Schedule J due 1/3/2012. Statement of Financial Affairs due 1/3/2012. Statement - Form 22A Due: 1/3/2012. Statement of assistance of non-attorney due 1/3/2012. Verification of creditor matrix due 1/3/2012. Declaration concerning debtors schedules due 1/3/2012. Statistical Summary due 1/3/2012. Debtor Certification of Employment Income due by 1/3/2012. Incomplete Filings due by 1/3/2012. (Hori, Brandi) (Entered: 12/20/2011) |
| 12/20/2011 | 2 | Meeting of Creditors with 341(a) meeting to be held on 01/26/2012 at 09:00 AM at RM 101, 725 S Figueroa St., Los Angeles, CA 90017. Objections for Discharge due by 03/26/2012. Cert. of Financial Management due by 03/26/2012 for Debtor and Joint Debtor (if joint case) (Hori, Brandi) (Entered: 12/20/2011) |
| 12/20/2011 | 3 | Certificate of Credit Counseling Filed by . (Hori, Brandi) (Entered: 12/20/2011) |
| 12/20/2011 | 4 | Statement of Social Security Number(s) Form B21 Filed by . (Hori, Brandi) (Entered: 12/20/2011) |
| 12/20/2011 | 5 | Notice of Requirement to Complete Course in Financial Management (BNC) . (Hori, Brandi) (Entered: 12/20/2011) |
| 12/20/2011 | | Receipt of Chapter 7 Filing Fee - $306.00 by 10. Receipt Number 20132416. (admin) (Entered: 12/21/2011) |
| 12/22/2011 | 6 | BNC Certificate of Notice (RE: related document(s)2 Meeting (AutoAssign Chapter 7)) No. of Notices: 4. Notice Date 12/22/2011. (Admin.) (Entered: 12/22/2011) |
| 12/22/2011 | 7 | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 7) filed by Debtor Carl Douglas Whaley, Joint Debtor LaVon Boyd Whaley) No. of Notices: 1. Notice Date 12/22/2011. (Admin.) (Entered: 12/22/2011) |
| 12/22/2011 | 8 | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 7) filed by Debtor Carl Douglas Whaley, Joint Debtor LaVon Boyd Whaley) No. of Notices: 1. Notice Date 12/22/2011. (Admin.) (Entered: 12/22/2011) |
| | | BNC Certificate of Notice (RE: related document(s)5 Notice of Requirement to Complete Course in Financial Management |

**EXHIBIT F**

| | | |
|---|---|---|
| 12/22/2011 | 9 | (BNC)) No. of Notices: 1. Notice Date 12/22/2011. (Admin.) (Entered: 12/22/2011) |
| 12/29/2011 | 10 | Request for courtesy Notice of Electronic Filing (NEF) Filed by Evan M Daily on behalf of Courtesy NEF. (Daily, Evan) (Entered: 12/29/2011) |
| 12/30/2011 | 12 | Application for extension of time to file schedules and/or plan Filed by Debtor Carl Douglas Whaley , Joint Debtor LaVon Boyd Whaley (Pennington-Jones, Patricia) (Entered: 01/05/2012) |
| 01/05/2012 | 11 | Order Granting extenison of time to file documents. Deadline is Jan 19, 2012 (Related Doc # doc ) Signed on 1/5/2012 (Toliver, Wanda) (Entered: 01/05/2012) |
| 01/07/2012 | 13 | BNC Certificate of Notice - PDF Document. (RE: related document(s)11 Order on Motion to Extend Time) No. of Notices: 1. Notice Date 01/07/2012. (Admin.) (Entered: 01/07/2012) |
| 01/19/2012 | 14 | Declaration concerning debtor's schedules , Statistical Summary of Certain Liabilities, Schedule B , Schedule C , Schedule E , Schedule F , Schedule G , Schedule H , Schedule I , Schedule J , Statement of Financial Affairs , Chapter 7 Statement of Current Monthly Income and Means Test Calculation - Form 22A , Declaration and Signature of Non-Attorney Bankruptcy Petition Preparer (Form 19) , Extraneous document(s) filed with the bankruptcy petition , Statement of Intent. Filed by Debtor Carl Douglas Whaley , Joint Debtor LaVon Boyd Whaley (RE: related document(s)1 Voluntary Petition (Chapter 7)). (Collins, Kim S.) (Entered: 01/26/2012) |
| 01/31/2012 | 15 | Continuance of Meeting of Creditors (Rule 2003(e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 03/14/12 at 09:00 AM. Debtor absent. Joint debtor absent. (Siegel (TR), Alfred) (Entered: 01/31/2012) |
| 02/01/2012 | 16 | Notice of Deficiency of Filing Fees Required to Add Additional Creditors Filed by . (Tran, Binh) (Entered: 02/01/2012) |
| 02/10/2012 | | Receipt of Amendment Filing Fee - $30.00 by 19. Receipt Number 20136307. (admin) (Entered: 02/13/2012) |
| 02/10/2012 | 17 | Amending Schedules F.. Filed by Debtor Carl Douglas Whaley , Joint Debtor LaVon Boyd Whaley . (Mcguire, Debra) (Entered: 02/13/2012) |

EXHIBIT F

| 02/14/2012 | 18 | Order Dismissing Case - **Both Debtors** Dismissed. Signed on 2/14/2012. (Jarquin, Jacqueline) (Entered: 02/14/2012) |
|---|---|---|
| 02/14/2012 | 19 | Notice of dismissal (BNC) (Jarquin, Jacqueline) (Entered: 02/14/2012) |
| 02/16/2012 | 20 | BNC Certificate of Notice (RE: related document(s)19 Notice of dismissal (BNC)) No. of Notices: 9. Notice Date 02/16/2012. (Admin.) (Entered: 02/16/2012) |
| 03/16/2012 | | Chapter 7 Trustee's Report of No Distribution: I, Alfred H Siegel (TR), having been appointed trustee of the estate of the above-named debtor(s), report that this case was dismissed or converted. I have neither received any property nor paid any monies on account of this estate. I hereby certify that the chapter 7 estate of the above-named debtor(s) has been fully administered through the date of conversion or dismissal. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 1 months. Assets Abandoned (without deducting any secured claims): Not Applicable, Assets Exempt: Not Applicable, Claims Scheduled: Not Applicable, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): Not Applicable. Filed by Trustee Alfred H Siegel (TR). (Siegel (TR), Alfred) (Entered: 03/16/2012) |
| 03/29/2012 | 21 | Bankruptcy Case Closed - DISMISSED (Lewis, Litaun) (Entered: 03/29/2012) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/31/2012 11:42:58 | | | |
| **PACER Login:** | ps4586 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:11-bk-61521-TD Fil or Ent: filed To: 8/31/2012 Doc From: 0 Doc To: 99999999 Term: included Format: html |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

EXHIBIT F

**CLOSED**

# U.S. Bankruptcy Court
## Central District Of California (Los Angeles)
### Bankruptcy Petition #: 2:12-bk-23390-WB

|  |  |
|---|---|
| *Date filed:* | 04/16/2012 |
| *Date terminated:* | 06/05/2012 |
| *Debtor dismissed:* | 05/22/2012 |
| *Joint debtor dismissed:* | 05/22/2012 |

*Assigned to:* Julia W. Brand
Chapter 13
Voluntary
Asset

*Debtor disposition:* Dismissed for Other Reason
*Joint debtor disposition:* Dismissed for Other Reason

| *Debtor* | represented by **Carl Douglas Whaley** |
|---|---|
| **Carl Douglas Whaley** | PRO SE |

11431 Jenkins St
Artesia, CA 90701
LOS ANGELES-CA
562-291-9987
SSN / ITIN: xxx-xx-7069

| *Joint Debtor* | represented by **LaVon Boyd Whaley** |
|---|---|
| **LaVon Boyd Whaley** | PRO SE |

11431 Jenkins St
Artesia, CA 90701
LOS ANGELES-CA
562-291-9987
SSN / ITIN: xxx-xx-6142

*Trustee*
**Nancy K Curry (TR)**
700 S Flower Street, Suite 1215
Los Angeles, CA 90017
213-689-3014

*U.S. Trustee*
**United States Trustee (LA)**
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

| Filing Date | # | Docket Text |
|---|---|---|
|  |  | Chapter 13 Voluntary Petition . Fee Amount $281 Filed by Carl Douglas Whaley , LaVon Boyd Whaley Schedule A due 4/30/2012. Schedule B due 4/30/2012. Schedule C due |

**EXHIBIT G**

| | | |
|---|---|---|
| 04/16/2012 | 1 | 4/30/2012. Schedule D due 4/30/2012. Schedule E due 4/30/2012. Schedule F due 4/30/2012. Schedule G due 4/30/2012. Schedule H due 4/30/2012. Schedule I due 4/30/2012. Schedule J due 4/30/2012. Statement of Financial Affairs due 4/30/2012. Chapter 13 Plan due by 4/30/2012. Statement - Form 22C Due: 4/30/2012.Statement of Related Case due 4/30/2012. Notice of available chapters due 4/30/2012. Statement of assistance of non-attorney due 4/30/2012. Verification of creditor matrix due 4/30/2012. Summary of schedules due 4/30/2012. Declaration concerning debtors schedules due 4/30/2012. Statistical Summary due 4/30/2012. Debtor Certification of Employment Income due by 4/30/2012. Incomplete Filings due by 4/30/2012. (Marshall, Kacye) (Entered: 04/16/2012) |
| 04/16/2012 | 2 | Meeting of Creditors with 341(a) meeting to be held on 05/17/2012 at 10:00 AM at RM 103, 725 S Figueroa St, Los Angeles, CA 90017. Confirmation hearing to be held on 12/12/2012 at 10:00 AM at Crtrm 1375, 255 E Temple St., Los Angeles, CA 90012. Proof of Claim due by 08/15/2012. (Marshall, Kacye) (Entered: 04/16/2012) |
| 04/16/2012 | 3 | Certificate of Credit Counseling Filed by Debtor Carl Douglas Whaley , Joint Debtor LaVon Boyd Whaley . (Marshall, Kacye) (Entered: 04/16/2012) |
| 04/16/2012 | 4 | Statement of Social Security Number(s) Form B21 Filed by Debtor Carl Douglas Whaley , Joint Debtor LaVon Boyd Whaley . (Marshall, Kacye) (Entered: 04/16/2012) |
| 04/16/2012 | | Receipt of Chapter 13 Filing Fee - $281.00 by 18. Receipt Number 20141394. (admin) (Entered: 04/17/2012) |
| 04/18/2012 | 5 | BNC Certificate of Notice (RE: related document(s)2 Meeting (AutoAssign Chapter 13)) No. of Notices: 33. Notice Date 04/18/2012. (Admin.) (Entered: 04/18/2012) |
| 04/18/2012 | 6 | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor Carl Douglas Whaley, Joint Debtor LaVon Boyd Whaley) No. of Notices: 1. Notice Date 04/18/2012. (Admin.) (Entered: 04/18/2012) |
| 04/18/2012 | 7 | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor Carl Douglas Whaley, Joint Debtor LaVon Boyd Whaley) No. of Notices: 1. Notice Date 04/18/2012. (Admin.) (Entered: 04/18/2012) |
| | | Request for courtesy Notice of Electronic Filing (NEF) Filed by |

**EXHIBIT G**

| | | |
|---|---|---|
| 04/25/2012 | 8 | Giles, Philip. (Giles, Philip) (Entered: 04/25/2012) |
| 04/30/2012 | 9 | Application for extension of time to file schedules and/or plan Filed by Debtor Carl Douglas Whaley (Beauchamp, Sonia) (Entered: 05/01/2012) |
| 05/03/2012 | 10 | Chapter 13 Trustee's Notice of Requirements *with Proof of Service*. (Curry (TR), Nancy) (Entered: 05/03/2012) |
| 05/08/2012 | 11 | ORDER approving application for extension of time to file schedules and/or plan; deadline 5/11/12. Signed on 5/8/2012. (Beauchamp, Sonia) (Entered: 05/08/2012) |
| 05/11/2012 | 12 | Application for extension of time to file schedules and/or plan Filed by Debtor Carl Douglas Whaley (Beauchamp, Sonia) (Entered: 05/14/2012) |
| 05/16/2012 | 13 | ORDER Denying application for extension of time to file schedules and/or plan Signed on 5/16/2012. (Beauchamp, Sonia) (Entered: 05/16/2012) |
| 05/18/2012 | 14 | Chapter 13 Trustee's declaration that debtor failed to appear for examination. (Curry (TR), Nancy) (Entered: 05/18/2012) |
| 05/21/2012 | 15 | Chapter 13 Plan Filed by Debtor Carl Douglas Whaley , Joint Debtor LaVon Boyd Whaley (RE: related document(s)1 Chapter 13 Voluntary Petition . Fee Amount $281 Filed by Carl Douglas Whaley , LaVon Boyd Whaley Schedule A due 4/30/2012. Schedule B due 4/30/2012. Schedule C due 4/30/2012. Schedule D due 4/30/2012. Schedule E due 4/30/2012. Schedule F due 4/30/2012. Schedule G due 4/30/2012. Schedule H due 4/30/2012. Schedule I due 4/30/2012. Schedule J due 4/30/2012. Statement of Financial Affairs due 4/30/2012. Chapter 13 Plan due by 4/30/2012. Statement - Form 22C Due: 4/30/2012.Statement of Related Case due 4/30/2012. Notice of available chapters due 4/30/2012. Statement of assistance of non-attorney due 4/30/2012. Verification of creditor matrix due 4/30/2012. Summary of schedules due 4/30/2012. Declaration concerning debtors schedules due 4/30/2012. Statistical Summary due 4/30/2012. Debtor Certification of Employment Income due by 4/30/2012. Incomplete Filings due by 4/30/2012.). (Lazarte, Val ) (Entered: 05/22/2012) |
| | | Chapter 13 Statement of Current Monthly and Disposable Income , Schedule B , Schedule C , Schedule E , Schedule I , Summary of Schedules , Declaration and Signature of Non-Attorney Bankruptcy Petition Preparer (Form 19) , Declaration |

**EXHIBIT G**

| | | |
|---|---|---|
| 05/21/2012 | 16 | concerning debtor's schedules , Schedule A , Schedule B, Schedule C, Schedule D , Schedule E, Schedule F , Schedule G , Schedule H , Schedule I, Schedule J , Statement of Financial Affairs Filed by Debtor Carl Douglas Whaley , Joint Debtor LaVon Boyd Whaley (RE: related document(s)1 Voluntary Petition (Chapter 13)). (Lazarte, Val ) (Entered: 05/22/2012) |
| 05/22/2012 | 17 | ORDER and notice of dismissal for failure to appear at 341(a) meeting - **Both Debtors** Dismissed. All pending motions and adversary proceedings are moot and dismissed. (BNC) Signed on 5/22/2012. (Le, James) (Entered: 05/22/2012) |
| 05/24/2012 | 18 | Chapter 13 Trustee's Final Report and Account . (Curry (TR), Nancy) (Entered: 05/24/2012) |
| 05/24/2012 | 19 | BNC Certificate of Notice (RE: related document(s)17 ORDER and notice of dismissal for failure to appear at 341(a) meeting (Option A or Option B) (BNC)) No. of Notices: 33. Notice Date 05/24/2012. (Admin.) (Entered: 05/24/2012) |
| 06/05/2012 | 20 | Bankruptcy Case Closed - DISMISSED. An Order dismissing this case was entered and notice was provided to parties in interest. Since it appears that no further matters are required and that this case remain open, or that the jurisdiction of this Court continue, it is ordered that the Trustee is discharged, bond is exonerated, and the case is closed. (Vandensteen, Nancy) (Entered: 06/05/2012) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 08/31/2012 11:41:28 | | |
| **PACER Login:** | ps4586 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:12-bk-23390-WB Fil or Ent: filed To: 8/31/2012 Doc From: 0 Doc To: 99999999 Term: included Format: html |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

EXHIBIT G

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

A true and correct copy of the foregoing document entitled (*specify*): Objection to Confirmation will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) September 6, 2012      I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Chapter 13 Trustee: Nancy K Curry  ecfnc@trustee13.com
U.S. Trustee:  ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) September 6, 2012                   I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

LaVon Boyd Whaley and Carl Douglas Whaley
11431 Jenkins Street
Artesia, CA 90701

Honorable Vincent P. Zurzolo
Central District of California - Los Angeles Division
U.S. Bankruptcy Court, Roybal Federal Building, 255 East Temple Street, Suite 1360, Los Angeles, CA  90012-3332

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 6, 2012 | DANIEL BRAINARD | /s/ DANIEL BRAINARD |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**